**UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT OF FLORIDA**

CASE NO. **18-80139**CR-DIMITROULEAS

/MATTHEWMAN

18 U.S.C. § 371
22 U.S.C. § 2278
50 U.S.C. § 1702
50 U.S.C. § 1705(a)
18 U.S.C. § 554
18 U.S.C. § 2

FILED by _____ D.C.

JUL 0 5 2018

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

**UNITED STATES OF AMERICA**

vs.

**JUNIOR JOEL JOSEPH, and
JIMY JOSEPH**

**Defendants.**

_____/

**INDICTMENT**

The Grand Jury charges:

**INTRODUCTION**

At all times relevant to this Indictment,

The Arms Export Control Act and International Traffic in Arms Regulations

1.     In furtherance of world peace and the security and foreign policy of the United

States, the United States regulated and restricted the export of defense articles, including arms,

munitions, and implements of war, pursuant to the Arms Export Control Act ("AECA"). 22 U.S.C.

1

§ 2778.    The AECA authorized the President to control the export of defense articles and services from the United States, and required that every person engaged in the business of exporting defense articles from the United States obtain a license or other approval from the United States Department of State.   22 U.S.C. § 2778(b)(1)(A)(I).   The regulations issued under the AECA are the International Traffic in Arms Regulations ("ITAR").   22 C.F.R. §§ 120-130.   The ITAR define exporting to include, among other things:   "[s]ending or taking a defense article out of the United States in any manner . . . ."   22 C.F.R. § 120.17.

2.    The ITAR contained a list of defense articles and defense services which are subject to control by these regulations. The list was called the United States Munitions List. 22 C.F.R § 121.1.

3.    Exports to certain countries are identified in the ITAR as being subject to a policy of license application denial.   It is the policy of the United States to deny licenses and other approvals for exports of defense articles destined for Haiti under most circumstances.   22 C.F.R. § 126.1(j).

4.    Unless specifically exempted, persons engaged in the export of defense articles covered must be registered with the Department of State's Directorate of Defense Trade Controls ("DDTC"), and must apply for and receive a license or other written approval to export the defense article from the United States.   DDTC maintains records of companies and individuals who have registered with DDTC and applied for and received export licenses.

5.    Rifles of the AK-15 type, including the DPMS Model A-15, AR15 variant, (hereinafter "AK-15 type rifles") were "defense articles" listed in Category I of the USML. 22

2

C.F.R. § 121.1.   At all times relevant to this Indictment, AK-15 type rifles could not be exported from the United States to Haiti without authorization from DDTC.

6.     Glock Model 17, 9mm semi-automatic pistols were a "defense article" listed in Category I of the USML. 22 C.F.R. § 121.1.   At all times relevant to this Indictment, Model 17 Glock semi-automatic pistols could not be exported from the United States to Haiti without authorization from DDTC.

7.     Ammunition for firearms under .50 caliber, including AR-15 type rifles and Model 17 Glock semi-automatic pistols, was a "defense article" listed in Category I of the USML. 22 C.F.R. § 121.1.   At all times relevant to this Indictment, ammunition for firearms under .50 caliber could not be exported from the United States to Haiti without authorization from DDTC.

The International Emergency Economic Powers Act and Export Administration Regulations

8.     The export of other items that are not regulated by the Department of State may be regulated by the United States Department of Commerce under the International Emergency Economic Powers Act ("IEEPA"), Title 50, United States Code, Sections 1701-1707.   Under IEEPA, the President of the United States was granted authority to deal with unusual and extraordinary threats to the national security, foreign policy, or economy of the United States.   50 U.S.C. § 1701(a).   The President, under IEEPA, could declare a national emergency through Executive Orders that have the full force and effect of law.

9.     On August 17, 2001, under the authority of IEEPA, the President issued Executive Order 13222, which declared a national emergency with respect to the unrestricted access of foreign parties to United States goods and technologies, and extended the Export Administration Regulations ("EAR"), set forth at Title 15, Code of Federal Regulations, Parts 730-774.   Through

3

the EAR, the Department of Commerce imposed license or other requirements before an item subject to the EAR could be lawfully exported from the United States.   These items were included on the Commerce Control List ("CCL"), published at Title 15, Code of Federal Regulations, part 774, Supplement No. 1.   Items on the CCL were categorized by Export Control Classification Number ("ECCN"), which denoted the applicable export controls depending on destination, end use, and end user.   The President issued annual Executive Notices extending the national emergency declared in Executive Order 13222 for the time period covered by that Executive Order through the time covered by this Indictment.   *See, e.g.,* 82 Fed. Reg. 39,005 (Aug. 16, 2017).

10.     Pursuant to its authority derived from IEEPA, the DOC reviewed and controlled the export of certain goods and technology from the United States to foreign countries.   In particular, the DOC placed restrictions on the export of goods and technology that it determined could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States.   Under IEEPA and the EAR, it was a crime to willfully export, or attempt or conspire to export, from the United States any item listed on the CCL requiring an export license without first obtaining an export license from the DOC.   *See* 50 U.S.C. § 1705(c); 15 C.F.R. § 764.2.   It was also a crime to willfully cause, aid, or abet activity prohibited by the EAR. 15 C.F.R. § 764.2.

11.     Shotguns, including Standard Manufacturing Model DP-12 shotguns and Rossi Model ST12 shotguns, with a barrel length in excess of eighteen (18) inches were listed on the CCL under ECCN 0A984.   At all times relevant to this indictment, shotguns with a barrel length in excess of eighteen (18) inches required a license for export to Haiti for crime control reasons.

12.     Ammunition for shotguns listed on the CCL under ECCN 0A984 also was listed on the CCL under ECCN 0A984.   At all times relevant to this Indictment, this shotgun ammunition required a license for export to Haiti for crime control reasons.

<u>Defendant and Related Entities</u>

13.     Global Dynasty Corps, LLC ("Global Dynasty") was a limited liability company that maintained a retail store located in Orlando, Florida.   Beginning on or about at least March 12, 2012, Global Dynasty registered with the United States Department of State as a manufacturer/exporter of defense articles, which made the company eligible to apply for DDTC export authorization.

14.     Defendant JUNIOR JOEL JOSEPH was the owner, operator, and licensee of Global Dynasty Corps, LLC.

15.     Defendant JIMY JOSEPH was the brother of JUNIOR JOEL JOSEPH, and former co-manager of Global Dynasty Corps, LLC.

16.     Global Dynasty Corps, S.A. ("Global Dynasty Haiti") was a related company to Global Dynasty based in Port-Au-Prince, Haiti.

17.     Neither defendant JUNIOR JOSEPH, JIMY JOSEPH, nor Global Dynasty Corps, LLC possessed a license by the Department of Commerce to export shotguns or shotgun ammunition to Haiti in or about August 2016.

18.     Neither JUNIOR JOSEPH, JIMY JOSEPH, nor Global Dynasty Corps, LLC possessed a license by the Department of State, Directorate of Defense Control to export defense articles to Haiti in or about August 2016.

## COUNT 1

The allegations contained in Introduction paragraphs one through 18 of this Indictment are realleged and incorporated as if fully set forth herein.

From on or about June 20, 2016 and continuing until on or about September 9, 2016, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**JUNIOR JOEL JOSEPH and**
**JIMY JOSEPH,**

did knowingly and willfully combine, conspire, confederate and agree, with persons known and unknown to the Grand Jury, to: commit an offense against the United States, that is: to (a) export and cause to be exported from the United States to a place outside thereof, that is, Haiti, firearms, that is, Standard Manufacturing Model DP-12 shotguns and Rossi Model ST12 shotguns, with a barrel length in excess of eighteen (18) inches, and shotgun ammunition, without first having obtained the required authorization from the United States Department of Commerce, in violation of Title 50, United States Code, Sections 1702 and 1705, and Title 15, Code of Federal Regulations, Sections 736.2 and 764.2; and (b) to knowingly and willfully export and cause to be exported from the United States to a place outside thereof, that is, Haiti, defense articles, that is, rifles of the AK-15 type, including DPMS Model A-15, AR15 variant and Glock Model 17, 9mm semi-automatic pistols, from the United States to Haiti, without having first obtained a license or written approval from the United States Department of State, Directorate of Defense Trade Controls, in violation of Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1.

6

## PURPOSE OF THE CONSPIRACY

It was the purpose of the conspiracy to illegally export and send firearms and ammunition from the United States to Haiti without having obtained the required authorization, license or approval.

## MANNER AND MEANS

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose and object of the conspiracy included, among others, the following:

A.     JIMY JOSEPH purchased firearms and ammunition in Florida to be exported from the United States.

B.     JUNIOR JOSEPH, JIMY JOSEPH and their co-conspirators, having failed to obtain the required authorization, license or approval, concealed the firearms and ammunition in a Mitsubishi truck to be exported from the United States to Haiti.

C.     JUNIOR JOSEPH, JIMY JOSEPH and their co-conspirators caused the Mitsubishi truck containing the firearms and ammunition to be delivered to the Port of Palm Beach and thereafter exported from the United States to Haiti.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish the object of the conspiracy, defendants JUNIOR JOSEPH and JIMY JOSEPH and others known and unknown to the Grand Jury committed at least one of the following overt acts, among others, within the Southern District of Florida and elsewhere.

1.     On or about May 31, 2016, defendant JUNIOR JOSEPH, as President of Global Dynasty Corps, LLC, ran a firearms background check on defendant JIMY JOSEPH for the purchase of 159 shotguns and 5 AR-15 type rifles.

2.     On or about July 19, 2016, defendant JIMY JOSEPH completed an ATF Form 4473, Firearms Transaction Record, for the purchase of a Glock Model 17, 9mm semi-automatic pistol, serial number BCBD761, from defendant JUNIOR JOSEPH at Global Dynasty Corps, LLC.

3.     On or about July 27, 2016, defendant JIMY JOSEPH solicited Unindicted Co-Conspirator 1 ("UCC-1") to purchase a Glock Model 17, 9mm semi-automatic pistol, serial number BCBD759, from defendant JUNIOR JOSEPH at Global Dynasty Corps, LLC.

4.     On or about August 3, 2016, defendant JUNIOR JOSEPH at Global Dynasty Corps, LLC received a Glock Model 17, 9mm semi-automatic pistol, serial number BCBD759, and a Glock Model 17, 9mm semi-automatic pistol, serial number BCBD761.

5.     On or about August 4, 2016, defendant JIMY JOSEPH picked up the Glock Model 17, 9mm semi-automatic pistol, serial number BCBD761, from defendant JUNIOR JOSEPH at Global Dynasty Corps, LLC.

6.     Between June 20, 2016 and August 6, 2016, defendant JIMY JOSEPH, defendant JUNIOR JOSEPH, and Unindicted Co-Conspirator 2 ("UCC-2") loaded the 159 shotguns, 5 AR-15 type rifles, two Glock semi-automatic pistols, and various boxes of ammunition, along with household items including a bedroom set purchased by JUNIOR JOSEPH, into the 2001 Mitsubishi truck that JIMY JOSEPH had previously purchased.

7.    On or about August 6, 2016, defendant JIMY JOSEPH and UCC-2 delivered a 2001 Mitsubishi truck containing household goods, an unlocked safe, ammunition, 159 shotguns, 5 AR-15 type rifles, two Glock semi-automatic pistols, and other items, to Monarch Shipping Lines at the Port of Palm Beach, Florida for shipment to St. Marc, Haiti.

8.    On or about August 13, 2016, defendant JIMY JOSEPH sent defendant JUNIOR JOSEPH copies of the Monarch shipping documents for the Mitsubishi truck containing the firearms via the text message application WhatsApp.

9.    On or about August 15, 2016, defendant JUNIOR JOSEPH sent a Haitian politician ("Individual-1") copies of the Monarch shipping documents for the shipment of the Mitsubishi truck containing the firearms via WhatsApp.

10.    On or about August 18, 2016, defendant JUNIOR JOSEPH sent copies of the Monarch shipping documents for the Mitsubishi truck containing the firearms via WhatsApp to someone associated with Individual-1 ("Individual-2").

11.    On or about August 26, 2016, defendant JUNIOR JOSEPH falsely completed and signed an ATF Form 4473, Firearms Transaction Record, stating that that UCC-1 had picked up a Glock Model 17, 9mm semi-automatic pistol, serial number BCBD759, on August 26, 2016, knowing that UCC-1 was not picking up the Glock pistol on that date.

12.    On or about August 28, 2016, defendant JUNIOR JOSEPH sent a WhatsApp message to defendant JIMY JOSEPH advising him to be careful.

13.    On or about August 29, 2016, defendant JUNIOR JOSEPH sent defendant JIMY JOSEPH a WhatsApp message with the phone number for Individual-2.

9

14.     On or about August 29, 2016, defendant JUNIOR JOSEPH sent defendant JIMY JOSEPH a WhatsApp message with the phone number for Individual-1.

15.     On or about September 1, 2016, defendant JUNIOR JOSEPH sent a WhatsApp chat to a third individual in Haiti ("Individual-3") stating, "I would like to get help from you to remove a truck from custom."

16.     Individual-3 responded to defendant JUNIOR JOSEPH via WhatsApp and asked where the truck was, what type of truck it was, when would it be there, and what the truck's year, make, and model were.

17.     On or about September 1, 2016, defendant JUNIOR JOSEPH sent a response to Individual-3 that the "truck was at St Marc, it was a 2003 Mitsubishi cargo truck and the help should include inspection free, can you do that?"

18.     Individual-3 responded to defendant JUNIOR JOSEPH via WhatsApp that "he understood and could do that".

19.     On or about September 1, 2016, defendant JUNIOR JOSEPH sent a reply to Individual-3 via WhatsApp and asked if he would be able to "go with us and not just send someone to ensure safe passage?" Defendant JUNIOR JOSEPH advised that the truck should be there by Tuesday and "it is completely full." Individual-3 responded to defendant JUNIOR JOSEPH via WhatsApp "No problem I should be able to clear it without any problem."

20.     On or about September 1, 2016, defendant JUNIOR JOSEPH sent a WhatsApp message to defendant JIMY JOSEPH advising that Individual-3 "wants to help w/out inspection

10

but can't go today or tomorrow since he is working on something things. I didn't tell him if the truck was there though Let me know."

JOSPEH

21.     On or about September 1, 2016, defendant JUNIOR JOSPH sent defendant JIMY JOSEPH a WhatsApp message with Individual-3's phone number.

22.     On or about September 3, 2016, Individual-3 sent a WhatsApp message to defendant JUNIOR JOSEPH advising:   "You are good. Try to get in contact with JIMY. I'll get the things done for you."

23.     On or about September 7, 2016, defendant JUNIOR JOSEPH forwarded a voice message he received via WhatsApp from Individual-3, advising him that: "the car is not in your name, don't involve yourself in it because when it involves guns its not a small issue, OK, , Be careful, let him take the responsibility, OK?" to defendant JIMY JOSEPH.

24.     On or about September 7, 2016, defendant JUNIOR JOSEPH forwarded a voice message he received via WhatsApp from Individual-3, advising that: "everything went south today, the car was confiscated until customs APN and the police know what they are going to do, this is going to another level," to defendant JIMY JOSEPH.

25.     On or about September 7, 2016, defendant JUNIOR JOSEPH forwarded a voice message he received via WhatsApp from Individual-3 advising that: "the police got a hold of one of the guns and the case is already at PortAU Prince AGD, I think there are brigade coming from Port Au Prince to get the car, this thing is making a lot of noise baby, anyway... don't include yourself in this because there is jail time involved, ok," to defendant JIMY JOSEPH

11

26.     On or about September 9, 2016, Individual-3 sent defendant JUNIOR JOSEPH photos via WhatsApp of the seizure of the firearms ammunition and equipment from the Mitsubishi truck

27.     On or about September 12, 2016, defendant JUNIOR JOSEPH sent a WhatsApp message to Individual-3 asking, "What's up brother?"   Individual-3 responded via WhatsApp to defendant JUNIOR JOSEPH that "I heard they r searching for a bunch of people"

28.     On or about October 19, 2016, defendant JIMY JOSEPH provided UCC-1 with a false bill of sale for a Glock Model 17, 9mm semi-automatic pistol, serial number BCBD759, and apologized to UCC-1 for putting him in a bad position.   Defendant JIMY JOSEPH advised UCC-1 that if he was contacted by agents he should give them the bill of sale and say that he sold the gun to defendant JIMY JOSEPH.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2

The allegations contained in Introduction paragraphs one through 18 of this Indictment are re-alleged and incorporated as if fully set forth herein.

On or about August 6, 2016, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**JUNIOR JOEL JOSEPH and**
**JIMY JOSEPH,**

did knowingly and willfully export and cause to be exported from the United States to Haiti, defense articles, that is, AR-15 Type Rifles, Glock semi-automatic pistols, and ammunition, without first having obtained the required authorization from the United States Department of

12

State, Directorate of Defense Trade Controls, in violation of Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1.

### COUNT 3

The allegations contained in Introduction paragraphs one through 18 of this Indictment are re-alleged and incorporated as if fully set forth herein.

On or about August 6, 2016, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**JUNIOR JOEL JOSEPH and
JIMY JOSEPH,**

did knowingly and willfully export and cause to be exported from the United States to a place outside thereof, that is, Haiti, Standard Manufacturing Model DP-12 shotguns and Rossi Model ST12 shotguns with a barrel length in excess of eighteen (18) inches, without first having obtained the required authorization from the United States Department of Commerce, in violation of Title 50, United States Code, Sections 1702 and 1705; Title 15, Code of Federal Regulations, Sections 736.2 and 764.2; and Title 18, United States Code, Section 2.

### COUNT 4

The allegations contained in Introduction paragraphs one through 18 of this Indictment are re-alleged and incorporated as if fully set forth herein.

On or about August 6, 2016, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**JUNIOR JOEL JOSEPH and
JIMY JOSEPH,**

13

did fraudulently and knowingly attempt to export and send merchandise from the United States, contrary to any law or regulation of the United States, and did facilitate the transportation, concealment and sale of such merchandise, articles, and objects, to wit: AR-15 Type Rifles, Glock semi-automatic pistols, and ammunition from the United States to Haiti, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States; and did aid and abet each other, all in violation of Title 18, United States Code, Section 554; and Title 18, United States Code, Section 2.

A TRUE BILL,

_____
FOREPERSON

_____
BENJAMIN G. GREENBERG
UNITED STATES ATTORNEY

_____
MICHAEL WALLEISA
ASSISTANT UNITED STATES ATTORNEY

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

**JUNIOR JOEL JOSEPH, and
JIMY JOSEPH**

_____ **Defendants.** _____/

CASE NO. _____

**CERTIFICATE OF TRIAL ATTORNEY\***

**Superseding Case Information:**

New Defendant(s) _____ Yes _____ No
Number of New Defendants
Total number of counts _____

**Court Division**: (Select One)

Miami _____   Key West _____
FTL _____   WPB __X__   FTP _____

I do hereby certify that:

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter:     (Yes or No)     __No__
     List language and/or dialect     _____

4.   This case will take     __5__     days for the parties to try.

5.   Please check appropriate category and type of offense listed below:
     (Check only one)                          (Check only one)

I       0  to  5 days     __X__
                                                 Petty     _____
II      6  to  10 days     _____     Minor     _____
III     11  to  20 days     _____     Misdem.     _____
IV      21  to  60 days     _____     Felony     __X__
V       61 days and over     _____

6.   Has this case been previously filed in this District Court?     __No__     (Yes or No)
If yes:
Judge: _____     Case No. _____
          (Attach copy of dispositive order) _____
Has a complaint been filed in this matter?     __yes__
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the District of _____

Is this a potential death penalty case?     _____ (Yes or No)

7.   Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?     _____Yes     __X__ No

8.   Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?     Yes _____     __X__ No

_____
MICHAEL G. WALLEISA,
ASSISTANT U.S. ATTORNEY
Florida Bar No. 539570

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
<u>PENALTY SHEET</u>

**Defendant's Name**: <u>JUNIOR JOEL JOSEPH</u>          **Case No**: _____

Count:   1

<u>Conspiracy to export firearms</u>

<u>Title 18, United States Code, Section 371</u>

**\* Max. Penalty:** 5 years' imprisonment; $250,000 fine; 3 years' supervised release.

Count:   2

<u>Exporting Firearms without a License</u>

<u>Title 22, United States Code, Section 2778</u>

**\*Max. Penalty: 20** years' imprisonment; $250,000 fine; 3 years' supervised release.

Counts:   3

<u>Conspiracy to Export Firearms without a license</u>

<u>Title 50, United States Code, Section 1702 and 1705</u>

**\*Max. Penalty:**. 20 years' imprisonment; $250,000 fine; 3 years' supervised release

Count:    4

<u>Exporting or Sending Goods contrary to law</u>

<u>Title 18, United States Code, Section 554(a)</u>

**\*Max. Penalty:** 10 years imprisonment, $250,000 fine, 3 years' supervised release

Count:

_____

_____

**\*Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

**SOUTHERN DISTRICT OF FLORIDA**
PENALTY SHEET

**Defendant's Name**: <u>JIMY JOSEPH</u>  **Case No**: _____

Count:   1

Conspiracy to export firearms

Title 18, United States Code, Section 371

**\* Max. Penalty:** 5 years' imprisonment; $250,000 fine; 3 years' supervised release.

Count:   2

Exporting Firearms without a License

Title 22, United States Code, Section 2778

**\*Max. Penalty:** **20** years' imprisonment; $250,000 fine; 3 years' supervised release.

Counts:   3

 Conspiracy to Export Firearms without a license

Title 50, United States Code, Section 1702 and 1705

**\*Max. Penalty:**. 20 years' imprisonment; $250,000 fine; 3 years' supervised release

Count:   4

 Exporting or Sending Goods contrary to law

 Title 18, United States Code, Section 554(a)

**\*Max. Penalty:** 10 years imprisonment, $250,000 fine, 3 years' supervised release

Count:

_____

_____

**\*Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.